NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHEFFIELD KORTE JOINT VENTURE,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2024-1134

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 62972, 62973, Administrative Judge J. Reid Prouty, Administrative Judge Richard Shackleford, Administrative Judge Stephanie Cates-Harman.

---

Decided:  May 22, 2025

---

MICHAEL WILSON, UB Greensfelder, LLP, Saint Louis, MO, argued for appellant.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

2 SHEFFIELD KORTE JOINT VENTURE v. SECRETARY OF THE ARMY

Before MOORE, *Chief Judge*, CHEN and CUNNINGHAM, *Circuit Judges*.

MOORE, *Chief Judge*.

Sheffield Korte Joint Venture (Sheffield) appeals from a summary judgment decision of the Armed Services Board of Contract Appeals (Board), which denied Sheffield's request for an equitable adjustment and granted the U.S. Army Corps of Engineers' (Corps) request for repayment of improperly issued funds. We affirm.

## BACKGROUND

The Corps solicited bids for a fixed-price design-build contract to construct an Army Reserve Center in Charles County, Maryland. J.A 2 ¶¶ 1–2. The solicitation documents contained a specification describing general project requirements and conceptual drawings depicting major features of the project. J.A. 1825–59 (specification); J.A. 1441 (drawing). One major feature was a stormwater management system. J.A. 1441 (denoted by keynote 30).

Sheffield submitted a bid for the project that included a design for a centralized[1] stormwater management system. *See* J.A. 3278–81. In August 2015, the Corps accepted the bid and awarded Sheffield the contract for $21,427,802. J.A. 2 ¶¶ 1–2. In September 2016, Sheffield sent the Corps a letter explaining the stormwater management system depicted in the solicitation documents differed from that required by the State of Maryland. J.A. 3278–81. Sheffield noted the conceptual drawings

---

[1]    A centralized system collects stormwater in a single feature like a pond, whereas a decentralized system uses multiple, small-scale features to control stormwater and is intended to replicate natural hydrology. J.A. 3294–95.

included a centralized system but that local requirements mandated a decentralized system. *Id.* The Corps disagreed that the requirements in the solicitation documents differed from those imposed by local officials. J.A. 3282.

In April 2017, Sheffield submitted a request for an equitable adjustment of $1.8 million based on changes to the stormwater management system. J.A. 3292–301. The Corps denied Sheffield's request. J.A. 3370–71 (non-final decision). The Corps did, however, issue a series of unilateral contract modifications increasing the contract price by $418,406 to compensate Sheffield for expenses incurred in meeting local requirements. J.A. 7–14 ¶¶ 22–43.

In November 2020, Sheffield certified its request for an equitable adjustment. J.A. 3402. In April 2021, the Corps denied Sheffield's request and asked Sheffield to repay the $418,406, which the Corps claimed was issued in error. J.A. 3403–37 (final decision). Sheffield appealed to the Board. On summary judgment, the Board denied Sheffield's request for an equitable adjustment and ordered it to repay the Corps. J.A 16–21 (citing *United States v. Spearin*, 248 U.S. 132 (1918)). Central to the Board's analysis was its conclusion the *Spearin* implied warranty does not apply to the contract between Sheffield and the Corps. Sheffield appeals. We have jurisdiction pursuant to 41 U.S.C. § 7107(a)(1)(A) and 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review the Board's legal conclusions de novo. *Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366, 1370 (Fed. Cir. 2020). The Board's decision to grant or deny summary judgment is a legal conclusion. *Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1446 (Fed. Cir. 1997). So too is its interpretation of contracts, *Triple Canopy, Inc. v. Sec'y of the Air Force*, 14 F.4th 1332, 1338 (Fed. Cir. 2021), including deciding whether the *Spearin* implied warranty applies, *Blake Const. Co. v. United States*, 987 F.2d 743, 746 (Fed. Cir. 1993).

4  SHEFFIELD KORTE JOINT VENTURE v. SECRETARY OF THE ARMY

When the government provides a contractor with a defective design specification, the government is deemed to have breached the *Spearin* implied warranty that satisfactory contract performance will result from adherence to the specification. *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1344–45 (Fed. Cir. 2008); *see also Spearin*, 248 U.S. at 135–36. Such a breach entitles the contractor to recover all costs proximately flowing from the breach. *Rick's*, 521 F.3d at 1344–45. The *Spearin* implied warranty, however, does not attach to performance specifications. *Id.* at 1344. Unlike design specifications, which "explicitly state how the contract is to be performed and permit no deviations," performance specifications "specify the results to be obtained, and leave it to the contractor to determine how to achieve those results." *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1582 (Fed. Cir. 1987). A key factor in distinguishing a design specification from a performance specification is the amount of discretion given to the contractor in implementation. *Blake*, 987 F.2d at 746–47.

Sheffield argues the Board legally erred by concluding the *Spearin* implied warranty does not apply to its contract with the Corps. Appellant Br. 39–75. Specifically, Sheffield argues the solicitation documents (i.e., the specification and conceptual drawings) show a centralized stormwater management system is a design requirement to which the *Spearin* implied warranty applies. We do not agree.

While the conceptual drawings depict a "stormwater management facility" in the northern portion of the site, they do not specify the type of stormwater management system. J.A. 1441; J.A. 1511. The drawings do, however, state the stormwater management system depicted is only an approximation, and the contractor is responsible for determining the "actual size and location" of the system. J.A. 1441 (keynote 30); J.A. 1511 (keynote 30). Regardless, even if these drawings appear to depict a centralized

system, the specification makes clear it is not a design requirement.

The specification shows Sheffield was required to design the stormwater management system in accordance with local requirements, was responsible for obtaining all necessary permits, and had discretion to refine the conceptual design accordingly. *See, e.g.*, J.A. 1831 §§ 1.2.4.2–3, 1833 § 1.3.1, 1852 § 3.1.8.[2] The specification also provides that federal, state, and local regulations are "considered the minimum design criteria" for designing "stormwater management systems" and that "[l]ow impact development strategies" can be used to restore "the natural hydrologic functions of a site." J.A. 1859 § 3.4.5. Moreover, the specification incorporates the 2010 Maryland Stormwater Management Guidelines, J.A. 1843 § 2.2.1, which explain environmental site design[3] for stormwater management is required to the "maximum extent practicable," J.A. 747–62. Because Sheffield had significant discretion to design and build the stormwater management system in accordance with local regulations and the specification did not require a centralized stormwater management system, this is a performance specification to which the *Spearin* implied warranty does not apply. *Stuyvesant*, 834 F.2d at 1582.

---

[2]    The contract between the parties also includes a "permits and responsibilities" clause that makes Sheffield "responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work." J.A. 1692.

[3]    Environmental site design is a design for decentralized stormwater management systems. J.A. 754 ¶ 14; J.A. 3278–81.

6  SHEFFIELD KORTE JOINT VENTURE v. SECRETARY OF THE ARMY

CONCLUSION

We have considered Sheffield's remaining arguments and find them without merit.  For the foregoing reasons, we affirm.

**AFFIRMED**